

Richard C. Gordon, Esq.
Nevada Bar No. 9036
Kelly H. Dove, Esq.
Nevada Bar No. 10569
Jennifer L. McBee, Esq.
Nevada Bar No. 9110
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone:  (702) 784-5200
Facsimile:  (702) 784-5252
Email: rgordon@swlaw.com
         kdove@swlaw.com
         jmcbee@swlaw.com

*Attorneys for Defendant Wells Fargo Bank, N.A.*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT A. SLOVAK, an individual<br><br>               Plaintiff,<br><br>vs.<br><br>GOLF COURSE VILLAS HOMEOWNERS' ASSOCIATION; GOLF COURSE VILLAS LIMITED PARTNERSHIP; WELLS FARGO BANK, N.A., and  DOES 1 - 10, Inclusive,<br><br>               Defendants. | CASE NO.  3:13-cv-00569-RCJ-VPC<br><br>**WELLS FARGO BANK, N. A.'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS** |

This motion for sanctions is meritless and untimely, serves only to delay resolution of this matter, and should not have been filed.  Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by and through its counsel Snell & Wilmer L.L.P., hereby opposes Plaintiff's Motion for Sanctions and asks this Court to deny it.  This Opposition is based upon the Memorandum of Points and Authorities below, the papers on file, and any oral argument that the court chooses to hear.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Robert Slovak ("Mr. Slovak") defaulted on his payment obligations to Wells Fargo under a home equity line of credit secured by a deed of trust on his real property.  The transaction was straightforward and the default clear.  Rather than pay off the note or otherwise

accept responsibility for the debt, Mr. Slovak sued Wells Fargo five years ago, in 2013.  Mr. Slovak has never denied entering the loan, signing the loan documents, or defaulting on the loan, but has nonetheless argued persistently that Wells Fargo had no interest in the note or deed of trust.

While Wells Fargo had a motion to dismiss pending, Wells Fargo and Mr. Slovak (collectively, the "Parties") participated in a settlement conference in June 2014.  The Parties later disputed whether an agreement had been reached and whether Mr. Slovak had agreed to accept a reconveyance of the deed of trust, rather than a return of the physical document in exchange for payment of $280,000 to partially cover his outstanding indebtedness due under the loan.  On appeal from an order to enforce the settlement agreement in Wells Fargo's favor, the Ninth Circuit held on March 28, 2017, that Slovak had not agreed to accept a reconveyance, and reversed and remanded the matter for further proceedings.

In the seventeen months since then, Mr. Slovak has purported to pursue settlement, while taking no actual steps toward resolution.  After the Court accommodated Mr. Slovak's demand to permit "forensic inspection" of the documents, Slovak hired "examiners" who no federal court has recognized as persuasive to proclaim that the documents are copies or forgeries.  Wells Fargo made Mr. Slovak's counsel aware – if he was not already – that his supposed "experts" have been rejected time again by courts, to urge him not to file his Rule 11 motion.  Slovak inexplicably forged ahead, belatedly filing a new Rule 11 motion that was not served three weeks before filing as Rule 11 requires.

This Court should deny Mr. Slovak's Motion for Sanctions (the "Motion") for many reasons.  His warlike motion is both late and meritless.  His "experts" are not experts, and their conclusions deserve no weight, as Wells Fargo warned him in urging him not to file the motion.  Mr. Slovak also failed to comply with Rule 11, and falsely certified to this Court that he previously served the Rule 11 motion now filed, something Rule 11 requires – which he did not.

4840-2748-1969

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**RELEVANT BACKGROUND**

**I.    <u>Mr. Slovak Borrows $275,000 from Wells Fargo.</u>**

Mr. Slovak acquired title to 928 Northwood Boulevard #2, Incline Village, Nevada 89451 (the "Property") on September 16, 1996.  In April 2002, approximately six years after Mr. Slovak purchased the Property, he requested, and Wells Fargo provided, a home equity line of credit in the amount of up to $275,000 (the "Wells Fargo Loan").  As security for the Wells Fargo Loan, Mr. Slovak executed a Deed of Trust for the benefit of Wells Fargo, which was recorded on April 24, 2002.  Mr. Slovak later defaulted on the Wells Fargo Loan.

**II.    <u>Slovak Brings Suit Against Wells Fargo and Litigate a Settlement Agreement.</u>**

Apparently seeking to avoid the obligations to repay the Wells Fargo Loan, Mr. Slovak sued Wells Fargo on September 13, 2013.  On June 3, 2014, this Court held a settlement conference, that Mr. Slovak, his then-counsel of record, and representatives and counsel of Wells Fargo attended.  At the settlement conference, the Parties purported to reach an Agreement, which they memorialized on the record.

Two terms of the original settlement agreement were not disputed.  The first term of the Agreement required Mr. Slovak to remit payment of $280,000 to Wells Fargo as a precondition to Wells Fargo's performance obligations.  (Transcript of Settlement Agreement, attached hereto as Exhibit A, at 8:13-15.)  All Parties expressly and verbally agreed to this term.  The payment represented a payoff of the Note in the underlying action.  (*Id*.)  Mr. Slovak understood and, through counsel, voiced his agreement that the payment term would precede any obligations by Wells Fargo pertaining to the Note and Deed of Trust reconveyance:  "We will do the settlement agreement, we will tender the check, we will wait for these documents to come in."  (*Id*. at 11:8-13.)  The second term required Wells Fargo to provide Mr. Slovak with the canceled, original note upon Wells Fargo's receipt of the $280,000 payment. (*Id*. at 8:16-25.)

The Parties later disputed the third term.  Mr. Slovak claimed that he had only agreed to settle the matter if Wells Fargo produced the original deed of trust.  Wells Fargo, however, never agreed to produce the original deed of trust as a condition of settlement, as its representative and counsel candidly disclosed that deeds of trust were typically canceled by reconveyance.  (*Id*. at

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

4840-2748-1969

9:7-14.)  Indeed, Wells Fargo's representative and counsel expressed uncertainty as to whether Wells Fargo had possession of the original deed of trust.  (*Id*. at 10:4-8.)  Some discussion ensued about whether a deed of trust could be "returned" as opposed to "reconveyed."  The district court stated, "I think the understanding that we have here today is that the canceled note and the deed of trust will be returned to Mr. Slovak and there will be a reconveyance …."  (*Id*. at 10:14-16.)

Specifically, Wells Fargo's representative indicated that Wells Fargo's procedure is to issue a deed of reconveyance releasing the lien from the Property, stating, "… I know for sure we file a reconveyance releasing, you know, the lien from the property."  (*Id*. at 10:4-8.)  The district court recognized that there was some uncertainty about the exact mechanism by which the Note and Deed of Trust would be "returned:"

> I think it is the intention of Wells Fargo expressed that they are going to – [the representative] has represented he's simply not – it's not in his purview of understanding exactly how that would occur. But I think that the understanding that we have here today is that the canceled note and deed of trust will be returned to Mr. Slovak and that there will be a reconveyance….

(*Id*. at 10:9-16.)  Wells Fargo nowhere agreed to return an "original" deed of trust.  Mr. Slovak's counsel asked Wells Fargo's counsel to draft the initial settlement agreement.  (Decl. of Catherine O'Mara in Support of Wells Fargo Bank's Mot. to Enforce Settlement, attached hereto as Exhibit B, at ¶ 4.)   Later, Mr. Slovak's counsel affirmed that Wells Fargo should record a full reconveyance of the Deed of Trust upon payment, indicating that a reconveyance deed is typically how these matters are handled.  (*Id*. at ¶ 5.)  Settlement stalled after Mr. Slovak sought to add terms to the settlement agreement.  This Court entered an order enforcing the agreement, holding that Slovak had agreed to accept a reconveyance of the deed of trust, and not the return of the original.

### III.    The Ninth Circuit Reverses on Appeal.

Mr. Slovak appealed the ruling to the Ninth Circuit, arguing that there had been no meeting of the minds, and therefore no enforceable contract.  (Opening Br., attached hereto as Exhibit C, at 8.)

4840-2748-1969

1  On appeal, the Ninth Circuit reversed, holding that Slovak did not agree to accept a reconveyance

2  of the deed of trust, but instead required that the deed of trust be "returned." (*Slovak v. Wells*

3  *Fargo Bank, N.A.*, No. 15-15881, Mem. at 3 (9th Cir. Mar. 28, 2017), attached hereto as Exhibit

4  D.)

### IV.   Slovak Moves to Enforce the Settlement Agreement on Remand.

6       On remand, Mr. Slovak moved to enforce the settlement agreement, contending that Wells

7  Fargo must produce the original Note and Deed of Trust should he satisfy the condition precedent

8  of tendering $280,000.00.  (Pl.'s Mot. to Enforce Settlement Agreement, Docket No. 156, at 7.)

9  Wells Fargo opposed the motion, arguing that Mr. Slovak overstated the Ninth Circuit's holding,

10  and that Wells Fargo never represented that it would or could produce the original deed of trust,

11  so that there is no effective settlement agreement.  (Wells Fargo's Response to Mot. to Enforce

12  Settlement Agreement, Docket No. 165, at 5-6.)

13       In the interest of resolving this matter, however, Wells Fargo indicated that it was willing

14  to accept Mr. Slovak's payment of $280,000 in exchange for the original Note and Deed of Trust.

15  (*Id*. at 6-7.)  Since then, Mr. Slovak has evidenced no interest in that deal.  Wells Fargo's counsel

16  sent a settlement agreement to Mr. Slovak's counsel, and attended three hearings.  Mr. Slovak's

17  counsel never responded to the circulated settlement agreement, and never tendered payment.

18  Based on Mr. Slovak's request, this Court reluctantly agreed to allow Mr. Slovak to have the

19  documents examined.   The purported "expert" Mr. Slovak retained examined the Note and Deed

20  of Trust on June 8, 2018, the deadline set by this Court.

### V.   Mr. Slovak Announces His Intention to File a Sanctions Motion, But Fails to Do So Within the Time Allowed by this Court.

23       At the settlement conference on June 20, Mr. Slovak's counsel represented to the Court

24  Plaintiff's intention to file a sanctions motion based on the authenticity of the relevant documents,

25  and accusing Wells Fargo and its counsel of committing fraud on the Court.  (Transcript of

26  Proceedings, June 20, 2018, Docket No. 202, attached hereto as Exhibit E, at 5:6-15.)  The Court

27  ordered:  "You have until July 6 to file it."  (*Id*. at 14:17.)  On Friday July 6, 2018, the deadline to

28  file the motion, Mr. Slovak filed an application for extension of time to file the motion for

4840-2748-1969

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

sanctions ("First Request").  The First Request contained representations by counsel to the Court that the motion was "almost finished," and that he would be able to file it as requested.  (First Application for Extension, Docket No. 207, at 1:23.)  The First Request indicated the need for just a bit more time to finish drafting the arguments.  While Wells Fargo wished to avoid any delay, it did not oppose the First Request, in part based on the representations contained therein.  The Court granted the First Motion for Extension on July 11, 2018, making the new deadline July 13, 2018.  (Order, Docket No. 208.)

Instead of filing the almost-complete motion for sanctions on July 13, 2018, as this Court ordered and allowed, Mr. Slovak instead filed a Second Application for Extension of Time to File Motion for Sanctions (the "Second Request").   The Second Request sought an additional 35 days from July 13, 2018 – 21 days for the Rule 11 safe harbor, and a further 14 to file the sanctions motion.  (Second Application for Extension, Docket No. 209, at 1:26-28.)  Mr. Slovak requested up to and including August 16 to file the motion.  (*Id.*)  Wells Fargo opposed the Second Request on the grounds that it was not filed in the spirit of the Court's allowance for the safe harbor period—due to the zero hour timing of the filing—and that Plaintiff's request was the result of his own dilatory conduct, as well as his wish to have this matter heard by a new judge.  (Wells Fargo's Opp'n to the Second Request, Docket No. 210.)  The Court granted the Second Request on July 17, 2018, but wrote on the order that "This is the <u>final</u> extension."  (Order, Docket No. 211.) (Court's emphasis).

On July 19, 2018, Mr. Slovak's counsel mailed his Rule 11 safe harbor letter to Wells Fargo's counsel, giving notice to Wells Fargo of the Rule 11 sanctions motion that he purportedly intended to file by enclosing it.  (*See* July 19, 2018 Rule 11 Letter and Proposed Motion, attached hereto as Exhibit F.)  While Wells Fargo was not required by rule to do so, Wells Fargo responded to the safe harbor letter on August 10, 2018, detailing the letter and motion's shortcomings.  (*See* Aug. 10, 2018 Response Letter, attached hereto as Exhibit G.)  In particular, Wells Fargo listed a long series of decisions by courts rejecting the qualifications and opinions of Mr. Slovak's supposed experts, asking Mr. Slovak to reconsider filing his motion.  (*Id.*)  Mr. Slovak did not reconsider.  Instead of timely his motion in compliance with this Court's order

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
702.784.5200

1   extending time and consistent with Rule 11's requirement of providing the filed motion 21 days

2   before filing, Mr. Slovak moved for a Third Application for Extension of Time to File Motion for

3   Sanctions (the "Third Request") of one day.  (Third Application for Extension, Docket No. 216.)

4   He then, remarkably, filed a new motion that he had not previously transmitted to Wells Fargo,

5   seeking sanctions under Rule 11, 28 U.S.C. § 1927, and this Court's inherent authority.

6                                                **ARGUMENT**

7   **I.      The Motion Should Be Denied As Untimely.**

8           Mr. Slovak was given a total of 57 days to file his sanctions motion – the amount of time

9   between June 20, the date of the settlement conference, and August 16, the filing deadline.   In

10  granting Mr. Slovak's second request for a lengthy extension of time to file a sanctions motion on

11  July 17, 2018, Magistrate Judge Cooke made clear that the second extension was the last

12  extension the Court would entertain, writing in longhand on the face of the Order, "This is the

13  <u>final</u> extension."  As of the time of this filing, this Court has not granted Plaintiff's request for

14  more time and thus the motion is untimely.  As such, this Court should deny the motion in its

15  entirety on that basis.  Mr. Slovak has dragged this out long enough, and has abused the litigation

16  process through gamesmanship.  This Court should end this waste, abuse, and delay now.

17  **II.     Consistent with Every Other Federal Court that Has Considered the Admissibility of
18          Mr. Slovak's Purported "Experts," this Court Should Not Give any Weight to their
            Conclusions.**

19          **A.      James Madison Kelley and Gary Michaels Are Not Experts Whose Testimony
20                   Can Be Admitted Consistent with Fed. R. Evid. 702.**

21          Neither James Madison Kelley nor Gary Michaels are experts.  As such, their reports are

22  not admissible under Federal Rule of Evidence 702, or the governing standard in *Daubert v.*

23  *Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  The Motion should be denied on that basis.

24          Courts have repeatedly and consistently determined that Kelley is not an expert and have

25  precluded him from testifying.  Court findings and research reveal that Kelley began conducting

26  document examination in January 2012 when he examined his own note, which was the subject of

27  his own bankruptcy proceeding, and concluded that it was a forgery.  (*McDonald v. OneWest*

28  *Bank, FSB, et al.*, Case 2:10-cv-01952-RSL, Aug. 12, 2013 OneWest Bank, FSB's Motions in

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

4840-2748-1969

Limine, attached hereto as Exhibit H.)  However, even in Kelley's bankruptcy proceeding, in 2016, the bankruptcy court declined to consider Kelley's opinion to be admissible evidence, and declined to find that the document was a forgery.  (*In re James Madison Kelley*, Bankr. Case No. 08-55305-DM, Adv. Case No. 10-5245-DM, Jan. 21, 2016 Memorandum Decision on Motions for Summary Judgment, attached hereto as Exhibit I.)  Courts have likewise found that Kelley has "no education or training in handwriting analysis or forensic document examination." *McDonald v. Onewest Bank, FSB, et al.*, 2:10-cv-01952-RSL, ECF No. 298 (W.D. Wash. Aug. 23, 2013).

The verdict of the federal judiciary has been clear and consistent.  Consistent with Kelley's lack of expertise, every ruling we have located concerning Kelley has stricken his expert report and/or excluded him from testifying based on the *Daubert* standard.  *See, e.g.*, *McDonald v. Onewest Bank, FSB, et al.*, 2:10-cv-01952-RSL, ECF No. 298 (W.D. Wash. Aug. 23, 2013), *Malin v. JP Morgan Chase, N.A.*, 3:11-cv-00554-TAV-HBG, ECF No. 84 (E.D. Tenn. May 7, 2013); *Malin v. JPMorgan Chase Bank, Nat. Ass'n*, 558 F. App'x 641 (6th Cir. 2014) (affirming exclusion of Kelley's report and testimony); *The Bank of New York Mellon v. Didrick*, 2012-CA-003870, Order Granting Motion to Strike Defendant's Motion for Leave to Amend and Motion in Limine (Fla. 20th Cir. Ct. June 16, 2014); *JP Morgan Chase Bank v. Stevens*, 87 N.E.3d 1273 (Ohio Ct. App. 2017); *Alexander v. Capital One, N.A.*, 191 Wash. App. 1029 (2015).  In fact, to date, we have not located a single court that has permitted Kelley to testify as an expert.[1]  *Malin*, 11-cv-00554-TAV-HBG, ECF No. 84 at 6 (E.D. Tenn. May 7, 2013) ("Kelley has not been admitted as an expert in any other federal court.").  Moreover, counsel could locate no instance where Kelley affirmed the authenticity of any document, and appears to have testified exclusively that every mortgage document he has ever examined has been a forgery. *See generally*, *id.*

Gary Michaels cannot cure this problem, for many reasons.  <u>First</u>, he did not examine the documents, and in any event, is likewise not a credible expert.  <u>Second</u>, given that Kelley is not

---

[1]  After a diligent search, undersigned counsel could not locate any court in the country that allowed either Kelley or Michaels to testify as an expert.  The search included both Westlaw and researching cases listed in their reports, to the extent the dockets were available online.  Undersigned counsel informed Mr. Slovak's counsel of its research and requested that Mr. Slovak's counsel provide information to the contrary, if any exists.  Mr. Slovak's counsel has not provided any such information.

expert in such examinations, Michaels' review cannot bootstrap Kelley's non-expert report into helpful, admissible expert testimony.  <u>Third</u>, Michaels cannot reasonably opine about the authenticity of documents he has never seen.  <u>Fourth</u>, courts have the same misgivings about Michaels as they do Kelley, and have likewise excluded him from testifying, or have declined to approve him as an expert.  *See Peden v. BWW Law Grp.*, Civil Action No. PWG-16-4012, 2018 U.S. Dist. LEXIS 17434, at *1 n.1 (D. Md. Feb. 1, 2018) (noting that Michaels' report was "incomprehensible" and "raises more questions than it answers"); *In re Brumfiel*, No. 11-39881, 2015 Bankr. LEXIS 896, at *11 (Bankr. D. Colo. Mar. 20, 2015) (finding Michaels' report unpersuasive).

Moreover, the certifications Michaels claims, "FDE" and "DABFE" are deceptively similar to, but are not actual certifications.  Rather, the most common certifications for document examiners in the United States are "D-ABFDE" (Diplomate of the American Board of Forensic Document Examiners) and "D-BFDE" (Diplomate of the Board of Forensic Document Examiners).  Michaels is not listed as possessing either of those certifications on either organization's website.  Finally, Gary Michaels is hardly a disinterested examiner, as it appears he co-authored a self-published article entitled MORTGAGES, NOTES, DEEDS and LOANS in CRIME uploaded to Scribd (https://www.scribd.com/document/272657178/Mortgages-Notes-Deeds-and-Loans-in-Crime-Gary-Michaels), which details and decries the fraud purportedly being perpetrated by MERS.  The lack of credentials of Kelley and Michaels give this Court ample reason to deny the motion.

**B.     The Court Should Not Find that Kelley's or Michaels' Reports Provide a Sound Basis for Sanctions Against Wells Fargo or Its Counsel.**

Outside the purview of discovery, and during proceedings to enforce a non-existent settlement agreement, Mr. Slovak has retained "forensic examiners" that are not qualified and exhibit an obvious bias in favor of finding loan documents to be forged.  That courts have refused to find Kelley or Michaels to be admissible experts in this area is sufficient to defeat the Motion for Sanctions.  In other words, even if the Court has some uncertainty about the documents'

4840-2748-1969

authenticity despite the lack of credibility of Mr. Slovak's experts, that is insufficient to support the extraordinary relief of sanctions against Wells Fargo or its counsel.

**III.     This Court Should Deny Plaintiff's Motion for Sanctions under Rule 11.**

**A.     Plaintiff's Motion for Sanctions under Rule 11 Violates the Safe Harbor Provision Because Plaintiff Did Not Serve the Motion in Advance of Filing It.**

Federal Rule of Civil Procedure 11(c)(2) provides that a motion for sanctions under that Rule "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected ***within 21 days after service*** or within another time the court sets." *Id.* (Emphasis added). The so-called "safe harbor provision" requires the moving party to serve the motion 21 days in advance of filing, and provides the non-movant that time to withdraw or correct the challenged filing. Fed. R. Civ. P. 11(c)(2); *see also Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998). The safe harbor period "begins to run only upon service of the motion" in part to "define precisely the conduct claimed to violate the rule." *Barber*, 146 F.3d at 710*; Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, 1150 (9th Cir. 2003) (holding that moving party must serve "the motion" 21 days before filing "the motion").

At the risk of belaboring the obvious, Rule 11 requires that the motion served on the non-moving party and the filed motion be the same. *Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir. 2006) ("[t]he plain language...requires a copy of ***the actual motion for sanctions*** to be served on the persons(s) accused of sanctionable behavior at least twenty-one days prior to the filing of that motion") (emphasis added); *O'Connell v. Smith*, 2008 WL 477875, at *2 (D. Ariz. Feb. 19, 2008) (rejecting the argument that a draft motion raising similar bases for sanctions satisfied Rule 11(c)(2) and holding that Ninth Circuit law required that the "***actual motion be served***") (emphasis added); *see also SortiumUSA, LLC v. Hunger*, 2014 WL 1080765, at *4 (N.D. Tex. Mar. 18, 2014) (holding that "***failure to serve a copy of the actual motion***" for sanctions at least 21 days prior to its filing warrants denial of the Rule 11 motion) (emphasis added); *Orchestratehr, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 500 (N.D. Tex. 2016) (holding that the plain language provides that the movant must the same motion that was served upon the

Snell & Wilmer

L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

- 10 -

adversary); *Wells Fargo Home Mortg., Inc. v. Taylor*, 2004 WL 1771607, at *1 (E.D. La. Aug. 5, 2004) (denying Rule 11 motion where the movant sent a draft of the motion for sanctions, which was "insufficient to fulfill the Rule 11 requirements"); *Robinson v. Alutiq-Mele, LLC*, 643 F. Supp. 2d 1342, 1350–51 (S.D. Fla. 2009) ("By its plain language, Rule 11 requires a movant to file and serve ***the same sanctions  motion***.") (emphasis added).  Rule 11's safe harbor provision is not only mandatory – it requires strict compliance.  *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2001); *see also Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005) ("We enforce this safe harbor provision strictly.").

Mr. Slovak failed to comply with Rule 11's safe harbor provisions because he filed a motion different from the motion he served on July 19, 2018 with his safe harbor letter. (*Compare* Mot. with Ex. G.)  That different motion violates Rule 11's strictures and must be denied.

### B. The Motion's Assertion that the Motion Served Was "This Motion" Is Material and False.

The filed Motion asserts, "As set forth in the accompanying Certificate of Service, Pursuant [sic] to Rule 11(c)(2), on July 18 2018, ***this Motion was served upon Kelly Dove, Esq.***, from Snell & Wilmer, counsel for Wells Fargo."  (Mot. at 9.)  That statement is material, given the foregoing law requiring the prior service of the motion.

But it is also false.  Slovak's counsel did not in fact serve the same Motion he filed on August 17, but rather served a markedly different motion.  (*Compare* Mot. with Ex. G.)   Thus, the filed Motion falsely represents to this Court that it was served on the undersigned counsel on July 19, which it was not.  Thus, in addition to failing to satisfy the requirement of Rule 11(c)(2) that the motion be served 21 days before filing, the filed Motion materially (indeed crucially) misrepresents facts concerning compliance with Rule 11(c)(2).  This misleading is compounded by the failure to attach the letter and motion that were served on July 19 to Slovak's filed Motion as an exhibit.  Additionally, while the filed Motion indicates that the July 19 service is "set forth in the accompanying Certificate of Service, Pursuant [sic] to Rule 11(c)(2)," neither the filed Motion, nor any of the accompanying exhibits contain such a Certificate of Service.

4840-2748-1969

**C.     The Motion Is Improper Because both It and the Letter Fail to Identify the Specific Conduct that Violates Rule 11.**

Rule 11 requires that the letter and motion identify a paper, claim, defense, contention, or denial that must be withdrawn to avoid a Rule 11 motion.  However, both the letter and proposed motion fail to "describe the specific conduct that allegedly violates Rule 11(b)."  FRCP 11(c)(2) (emphasis added).  The proposed motion points to an entire brief (a reply brief from 2015 that asserted a mere intention to enforce a settlement agreement), without citing a page or line, or quoting any passage, and conclusorily asserts that the brief amounts to an intent to perform a settlement agreement.  (Ex. F, at 4:18-5:3.)  This is an abuse of Rule 11.

The Motion fares no better.  It briefly repeats the vague allusion to the 2015 reply brief, claiming that wishing to enforce the settlement somehow amounts to a sanctionable misrepresentation that the note produced in 2018 for examination was authentic.  (Mot., at 3:13-3:16.)  It then continues to complain of statements in open court, though statements are not actionable under Rule 11.  (*Id.* at 4:15-4:18.)  None of this amounts to conduct that can be held to violate Rule 11.

**D.     The Basis for the Rule 11 Motion Is Improper Because It Is Not a Factual Contention.**

The Motion utterly fails to explain why Slovak or his counsel believe Snell & Wilmer or Wells Fargo knew, or after a reasonable inquiry should have known, the Reply's "factual contentions [did not have] evidentiary support."  FRCP 11(b)(3).  Again, there is no factual contention about the note in the 2015 Reply that Mr. Slovak asserts violated Rule 11, so the proposed motion cannot possibly carry its burden.  Moreover, even if one construes the Reply (incorrectly) as making particular assertions about providing a note to Mr. Slovak in 2018, Kelley and Michaels are not credible experts, as demonstrated above, so his proposed motion still cannot possibly show that the Reply lacked evidentiary support.

4840-2748-1969

**IV.    The Motion Does Not Establish the Bad Faith Required for Sanctions under the Court's Inherent Authority.**

A Court may issue sanctions under its inherent authority when an attorney acts in bad faith, such as when an "attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).  Before awarding sanctions under its inherent powers, a "court must make an explicit finding that counsel's conduct "constituted or was tantamount to bad faith." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648–49 (9th Cir. 1997).  Such a finding is especially critical when the court uses its inherent powers to engage in fee-shifting, as Mr. Slovak requests here.  *See id.*

The Motion claims that sanctions under the Court's inherent authority are warranted here based on (1) Wells Fargo's purported "fabrication" of the Note and Deed of Trust and presentation for examination on June 8, 2018; (2) its counsel's complicity in the fraud; (3) refusal to provide an affidavit from Wells Fargo after the fraud was discovered; and (4) counsel's review of the experts' reports, and the lack of any admissible evidence contradicting the experts' reports. For the reasons explained above, (1) is not a sound basis for sanctions because there is no credible, admissible evidence establishing that the Note and Deed of Trust had been fabricated. Likewise, (4) is not a proper basis for sanctions, because this Opposition is the first document Wells Fargo or its counsel has filed since Mr. Slovak's filing the reports.  Mr. Slovak has not indicated what action Wells Fargo or its counsel should have taken in the last several weeks leading up to his Motion for Sanctions, let alone what conduct (or lack thereof) is sanctionable. The second and third bases likewise do not provide a basis for sanctions against Wells Fargo or its counsel.

**A.    Counsel Has Not Been Complicit in any Fraud.**

For the reasons discussed above, no credible evidence supports the conclusion that the Note and Deed of Trust are forgeries.  Notwithstanding that fact, even if the documents somehow turned out to be forgeries, there is no evidence that counsel could have known or was complicit in

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

- 13 -

fraud.  Counsel may rely on documents provided by a client, absent some indicia of fraud or other problem.  *See Tim Hortons USA, Inc. v. Singh*, 2017 WL 4837552, at *6 n.9 (S.D. Fla. Oct. 25, 2017) ("Attorneys rely on information received from their clients. If clients provide incorrect information, then it is not illogical to predict that the attorneys would also act on that incorrect information."); *Sabella v. Integrity Fishing Corp.*, 142 F.R.D. 260, 263 (D. Mass. 1992) (declining to impose Rule 11 sanctions for an attorney's misstatement based on information contained in a doctor's letter, because an attorney is allowed to rely upon the accuracy of a document produced to the attorney absent any red flags in the document that would require further investigation into its accuracy); *Manville Sales Corp. v. Paramount Sys., Inc.*, 123 F.R.D. 177, 178–79 (E.D. Pa. 1988) (refusing to impose Rule 11 sanctions on attorney for making an untruthful statement regarding a videotape in opposing a motion, because the attorney's misstatement came from the employee who produced the videotape, and it was reasonable for the attorney to rely on that employee's statement about the videotape); *Refac Int'l, Ltd. v. Hitachi Ltd.*, 141 F.R.D. 281, 286–87 (C.D. Cal. 1991) (refusing to impose Rule 11 sanctions on an a law firm for a complaint not grounded in fact, because the law firm reasonably "accepted the direction of its client, given the superior expertise, experience, and factual knowledge" of the client and the client's expert);  *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1012 (2d Cir. 1986) ("Here we assume that in preparing the complaint counsel did have to rely on his client at least to a certain extent … . Under the circumstances the extent of counsel's inquiry and his reliance on the information supplied by his client was 'reasonable' within the meaning of Rule 11.").

Indeed, challenging the authenticity of a document when there is no basis to do so is itself sanctionable.  *Baulch v. Johns*, 70 F.3d 813, 816–17 (5th Cir. 1995) (sanctioning attorney under § 1927 when the attorney argued that a document provided to him was not authentic without any basis for challenging its authenticity); *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 519–20 (4th Cir. 2018) (affirming the sanctions imposed on an attorney for challenging the authenticity of a document, because "[w]hen a litigant contests the authenticity of a document, the litigant must have a good faith basis for the objection; a litigant cannot challenge or deny the authenticity of a written agreement that he knows to be authentic." Counsel had, and still has, no

- 14 -

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

good faith basis for challenging the authenticity of the documents Wells Fargo provided.  As such, sanctions against Wells Fargo's counsel are wholly unwarranted.

### B.   Neither Counsel Nor Wells Fargo Refused to Provide an Affidavit.

The Motion claims that Wells Fargo and its counsel have refused to provide an affidavit verifying the documents' authenticity, and that this refusal has affected the litigation.  This claim is false.

On Saturday evening, June 16, 2018, Mr. Slovak's counsel requested that Wells Fargo provide an affidavit affirming the documents' authenticity no later than a hearing on Wednesday, June 20, 2018.  Counsel indicated that an affidavit could not be obtained on this timeline, and questioned whether it would serve any purpose to Mr. Slovak, as he would not change his position based on an affidavit from Wells Fargo.  Indeed, at the June 20 hearing, Mr. Slovak's counsel raised the same argument that he raises in the Motion – the purported failure to provide an affidavit on an emergency basis at his request.  Just as counsel had questioned, the judge asked Mr. Slovak's counsel whether it would have made a difference.  He answered, "no it would not have."  (Ex. E, at 12:13.)  Given the admission that an affidavit from Wells Fargo would carry no weight with Mr. Slovak or his counsel, his complaint that Wells Fargo did not immediately provide one is baseless.

### C.   The Motion Should Be Denied, Because Counsel Reasonably Believed, and Wells Fargo Has Declared, That the Documents Are Authentic.

The motion for sanctions also fails because the documents are authentic.  Counsel reasonably believed them to be so, because they were provided to counsel by Wells Fargo as the original.  (*See* Decl. of Kelly Dove, Esq., attached hereto as Exhibit J; *see also* Decl. of Kristin Schuler-Hintz, attached hereto as Exhibit K.)  Moreover, Wells Fargo now provides to this Court the requested declaration that the note provided to counsel was in fact authentic.  (Decl. of Shae Smith, attached hereto as Exhibit L.)  Given that there is no credible evidence that the documents are not authentic, there is no basis for sanctions.  Given the extraordinary demonstration required to justify sanctions, this untimely and unsupported motion fails badly.

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
702.784.5200

- 15 -

4840-2748-1969

**V.**    **The Motion Does Not Establish the Subjective Bad Faith Required for Sanctions Against Counsel Under Section 1927.**

Section 1927 authorizes sanctions only for the "multipli[cation of] proceedings," and applies only to "unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996).  Section 1927 sanctions "must be supported by a finding of subjective bad faith." *Id.*  "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.*  "For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass." *Id.*  In other words, while "reckless filings may be sanctioned, and nonfrivolous filings may also be sanctioned, reckless nonfrivolous filings, without more, may not be sanctioned." *Id.*

The Motion claims, without support, "Counsel has known sense [sic] the onset of this litigation that Wells Fargo did not have the original note and deed of trust." (Mot. at 9:27-28.) This is wholly unsubstantiated, and indeed false. For the reasons sanctions under the Court's inherent authority are not warranted, sanctions under section 1927 are not either.

### CONCLUSION

For the foregoing reasons, this Court should deny the Motion for Sanctions, and instead rule on Wells Fargo's motion to dismiss on the merits.


Dated: August 31, 2018                              SNELL & WILMER L.L.P.


                                                    /s/ *Kelly H. Dove*
                                                    Richard C. Gordon (NV Bar No. 9036)
                                                    Kelly H. Dove (NV Bar No. 10569)
                                                    Jennifer L. McBee (NV Bar No. 9110)

                                                    *Attorneys for Defendant Wells Fargo Bank, N.A.*

4840-2748-1969

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2018, I electronically filed the foregoing **WELLS FARGO BANK, N. A.'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS** with the Clerk of Court for the U.S. District Court, District of Nevada by using the Court's CM/ECF system.

Tory M. Pankopf, Esq.
Law Offices of Tory M. Pankopf, Ltd.
748 South Meadows Parkway, Suite 244
Reno, NV 89521
Email: tory@pankopfuslaw.com

DATED this 31st day of August, 2018.

_/s/ Ruby Lengsavath_____
An Employee of Snell & Wilmer L.L.P.

4840-2748-1969

- 17 -