# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ROBERT A. SLOVAK,

                Plaintiff,

v.

GOLF COURSE VILLAS HOMEOWNERS' ASSOCIATION; GOLF COURSE VILLAS LIMITED PARTNERSHIP; WELLS FARGO BANK, N.A., *et al.*,

                Defendants.

3:13-cv-00569-MMD-CLB

**ORDER**

Currently before the court are motions filed by both parties. First, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") filed a motion for attorneys' fees and costs (the "Fees Motion"), seeking its costs and fees in defending Plaintiff Robert Slovak's ("Slovak") previously filed motion for sanctions (the "Sanctions Motion"). (ECF No. 263.) Slovak opposed the motion, (ECF No. 269), and Wells Fargo replied. (ECF No. 270).[1]

In addition, Slovak filed a motion to strike the Fees Motion. (ECF No. 268.) Wells Fargo opposed this motion, (ECF No. 271), and Slovak replied. (ECF No. 277.) The court has thoroughly reviewed the various filings related to both motions, and for the reasons stated below, the court denies Wells Fargo's motion for attorneys' fees and costs, (ECF No. 263), and denies Slovak's motion to strike as moot. (ECF No. 268.)

///

///

///

---

[1] Slovak also filed a motion for leave to file a sur-reply to the Fees Motion, which he later withdrew. (ECF Nos. 273, 276).

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Facts and Procedural History Regarding Settlement Agreement

This case has a long and tortured history that dates back to 2002 when Wells Fargo provided Slovak a home equity loan on property in Incline Village, Nevada. To complete this transaction, Slovak signed and executed a note and "Deed of Trust" for the benefit of Wells Fargo, which was recorded in April 2002. Slovak failed to keep up the payments and ultimately defaulted on the loan.

Following his default, Slovak sued Wells Fargo and various other defendants in state court alleging claims for quiet title and declaratory relief. Wells Fargo removed the case to federal court. (ECF No. 1.) After extensive litigation, the parties participated in a settlement conference on June 3, 2014. (ECF No. 83.) At the conclusion of the settlement conference, the parties reached an agreement requiring Slovak to pay $280,000 to Wells Fargo in return for a reconveyance of the property from Wells Fargo.

Trouble quickly arose when the parties could not agree on the language and terms to be included in a written settlement agreement. (*See* ECF Nos. 91, 102.) The dispute centered on Slovak's claim that the terms of settlement agreement required Wells Fargo to return the "original" note and Deed of Trust to him prior to him providing Wells Fargo with payment. (ECF No. 102.) Wells Fargo disagreed asserting that references to returning the note and Deed of Trust meant only that Wells Fargo would reconvey title to Slovak. Ultimately, Wells Fargo filed a motion to enforce the terms of the settlement agreement, which the district court granted. (ECF No. 107, 128.) Slovak appealed the district court's decision to the Ninth Circuit Court of Appeals, who reversed and remanded for further proceedings. (ECF No. 140.)

### B. Facts and Procedural History Following Remand

Following remand, Slovak filed a motion to enforce the settlement agreement, arguing that the Ninth Circuit's decision required Wells Fargo to provide the "original" documents to him. (ECF No. 156.) At this time, Slovak was represented by Tory Pankopf ("Pankopf"). Wells Fargo claimed it located the original documents and agreed

to provide them to Slovak to enforce the original settlement terms. (ECF No. 165.) Ultimately, the court ordered the parties to meet and consummate the settlement agreement and instructed the parties to sign and file a written release of liability and stipulate to dismiss the action once Wells Fargo provided the document and Slovak provided payment. (ECF No. 215, at 14-16.)

On May 10, 2018, the court held a status conference to determine whether the settlement had been completed. (ECF No. 180, Hr'g Minutes; ECF No. 213, Hr'g Transcript.) The parties advised the court Slovak had concerns with the authenticity of the "original" documents and wanted the documents forensically examined to determine whether they were truly "originals." (ECF No. 213 at 3-5.) The court granted Slovak thirty days to conduct the requested forensic analysis. (*Id.* at 29.) The parties were ordered to either file a stipulation and order to dismiss the case on or before June 20, 2018, or to appear for a hearing that would be set on that same day, if the settlement was not completed. (*Id.* at 31-33; *see also* ECF No. 193.)

On June 20, 2018, the parties reconvened for another hearing. At this time, Slovak's attorney, Pankopf, claimed the forensic examination conducted on the documents "irrefutably" established the documents were "forgeries" and Wells Fargo had perpetrated a fraud on the court. (ECF No. 202, Hr'g Minutes; ECF No. 214 at 3, Hr'g Transcript.) His claims were based upon two expert reports he received prior to the hearing but did not provide to the court or opposing counsel. (ECF No. 214 at 5-6.) Based on the seriousness of Slovak's accusation, but without any evidence to review, the court concluded it could not rule on the outstanding motion to enforce settlement until it had an opportunity to consider the allegations made by Slovak. (*Id.* at 15-16.) Slovak then withdrew his motion to enforce without prejudice, indicating he wanted to proceed by filing a motion for sanctions. (*Id.* at 17.) The court ordered Pankopf to file the Sanctions Motion on or before Friday, July 6, 2018. (*Id.* at 214; ECF No. 202.)

///

///

### C. The Sanctions Motion

Pankopf did not file the motion on time; rather, he filed a motion for an extension of time requesting a seven-day extension to July 13, 2018, stating he was "almost finished with the motion and [he would] be able to file it as requested." (ECF No. 207 at 1.) Pankopf indicated he had two legal issues to finish researching and a few exhibits to identify prior to filing. (*Id.*) The court granted Slovak's request. (ECF No. 208.)

When July 13, 2018 arrived, Pankopf again failed to file the motion – instead filing another request for an extension. (ECF No. 209.) This time, Pankopf claimed he had now "concluded a motion pursuant to Rule 11 [was] appropriate" and he needed more time to comply with the safe harbor provisions required under the rule. (ECF No. 209 at 1.) He requested an extension of 35 days, which included 21 days to comply with the safe harbor provision and an additional 14 days to file the motion, resulting in a new deadline of August 16, 2018. (*Id.* at 2.) The court granted the request over Wells Fargo's objection. (ECF Nos. 210, 211.)

On July 19, 2018, Pankopf sent a letter to Wells Fargo's counsel including a document entitled, "Motion for Rule 11 Sanctions." (ECF No. 223, Ex. F.) The enclosed motion was only five pages long and argued for sanctions under a single legal theory – Rule 11. (*Id.* at 3-7.) Pankopf asserted he was providing the enclosed motion pursuant to the safe harbor provision of Rule 11. (*Id.* at 2.) He further stated if Wells Fargo did not "voluntarily produce the original note and original Deed of Trust within 21 days of service of the letter and draft motion," he would file the document seeking sanctions against Wells Fargo. (*Id.*) Wells Fargo responded on August 10, 2018, asserting the motion was unfounded and detailed the various deficiencies in Slovak's accusations. (ECF No. 223, Ex. G.)

On August 17, 2018, Slovak, through Pankopf, filed the Sanctions Motion. (ECF No. 218.) The motion sought sanctions against Wells Fargo, the law firm of Snell & Wilmer, LLP ("Snell"), and individual Snell attorneys, based on his claim that Wells Fargo failed to provide "original copies" of the note and Deed of Trust as required by the

4

parties' previous settlement agreement. (ECF No. 218.)  The Sanctions Motion that was filed was not the same motion served upon Wells Fargo and its counsel. (*Compare* ECF No. 218 *with* ECF No. 223, Ex. F at 3-7.)  Rather, the filed motion was approximately 11 pages in length and sought sanctions under three separate legal theories: Rule 11, 28 U.S.C. § 1927, and the court's inherent powers. (*See* ECF No. 218.)

The overarching contention in the Sanctions Motion was Slovak's argument that Wells Fargo and its counsel failed to provide "original copies" of the note and Deed of Trust as required by the parties' previous settlement agreement. (ECF No. 218.)  Slovak claimed the documents Wells Fargo and its counsel tendered as "originals" were, "at best copies or at worst fabricated forgeries." (*Id.* at 10.)  Slovak's argument was premised entirely upon the alleged expert reports and opinions provided by Dr. James E. Kelley and Gary Michaels, who Slovak proffered as experts in the field of forensic document examination.  Slovak offered the C.V.s of Dr. Kelley and Mr. Michaels, as well as their respective expert reports, as evidence to support his contentions. (*See* ECF No. 218, Exs. 8-11.)

Wells Fargo opposed the Sanctions Motion on August 31, 2019, specifically challenging Slovak's expert witnesses. (ECF No. 222.)  Wells Fargo asserted Slovak's experts must be rejected because neither witnesses' testimony or opinions satisfied the requirements of the Federal Rules of Evidence 702 or *Daubert*[2]. (*Id.* at 7-10.)  According to Wells Fargo, without these expert opinions and reports, there was no evidence in the record to support a finding that the documents tendered were not the originals.  After requesting another extension of time (ECF No. 224), Slovak filed his reply on September 11, 2018, providing a list of cases where Dr. Kelley supposedly "opined" on the validity of his expert findings. (ECF No. 225 at 3-4.)

After the Sanctions Motion was fully briefed, attorney Scott D. Johannessen ("Johannessen") petitioned the court to practice *pro hac vice* as counsel for Slovak,

---

[2] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

5

which was approved. (ECF No. 228, 232.) Pankopf remained as co-counsel. (ECF No. 232.)

Due to the seriousness of Slovak's allegations, the court ordered an evidentiary hearing to determine whether the expert opinions and reports offered by Slovak satisfied Rule 702 and *Daubert*. This hearing was held on November 28, 2018. (ECF No. 244, Hr'g Minutes; ECF No. 249, Hr'g Transcript.) The court heard testimony of Dr. Kelley regarding his qualifications and his expert opinions. (*Id.*) Both parties submitted various exhibits supporting their respective positions, some of which were admitted.

On January 15, 2019, the court issued its order denying the Sanctions Motion. (ECF No. 250.) The court analyzed whether the experts and their opinions satisfied the requirements of Rule 702 and *Daubert* and its progeny. (*Id.* at 11-22.) First, the court determined Dr. Kelley was not a qualified expert in the area of forensic document examination. (*Id.* at 13.) However, the court noted that even if Dr. Kelley could qualify as an expert, his expert reports and his opinions were not supported by scientifically reliable or accepted methods or principles and were not admissible. (*Id.* at 18.) The court also excluded Mr. Michaels as an expert and likewise rejected his report. The court determined that his opinions were not "expert" opinions, but rather opinions that Dr. Kelley's opinions were correct. (*Id.* at 21.) The court held this was little more than an attempt to bolster Dr. Kelley's credibility by legitimizing the "opinions" reached by him – which is not a proper basis for expert testimony. (*Id.* at 21-22.) Accordingly, the court held there was no evidence to support Slovak's motion that Wells Fargo produced fake or forged documents.

At the November hearing, Slovak requested the court bifurcate the ultimate issue of whether there was evidence that the documents were, in fact, originals. (ECF Nos. 244 at 4, 249 at 204.) Slovak argued that even if the court denied the Sanctions Motion or rejected his experts, there was still no evidence in the record that the documents were in fact originals and the court should hold an additional hearing to make a factual finding on this issue. (ECF No. 249 at 204.) He asserted there may still be a basis to contest

that the documents were originals – even without his expert testimony. (*Id.* at 227.) The court agreed to the requested bifurcation and set a second hearing for February 7-8, 2019. (ECF Nos. 244 at 5, 249 at 243.)

Prior to that hearing, the court issued a second order vacating the February hearing and ordering Slovak to deposit $280,000 to be held in an interest-bearing account, with the Clerk of Court on or before Monday, March 25, 2019 pursuant to LR 67-1 and 67-2. (ECF No. 251.) The court stated that based on its January 15, 2019 ruling (ECF No. 250), no evidence existed in the record supporting any contention the documents tendered by Wells Fargo were *not* the originals. (ECF No. 251 at 2.) Rather, this assertion appeared to be based upon Slovak's attorneys' suggestion that the documents may still be copies and no evidence existed to show the documents were, in fact, originals. (*Id.*) Whether Slovak's assertion had merit or not, the court determined Wells Fargo had tendered the documents it contended were the originals and established that it stood ready, willing, and able to finalize the terms of the settlement agreement upon an order of the court to do so. (*Id.*) However, the same could not be said for Slovak. (*Id.*) Over eight years had elapsed since the time the parties originally entered into the settlement agreement and it was unclear whether Slovak was ready, willing, and able to immediately pay Wells Fargo $280,000 upon an order of the court. (*Id.*) Therefore, prior to conducting any additional hearings or utilizing any additional resources of the court or the parties, the court ordered Slovak to deposit the required funds in the court's trust account. (*Id.* at 3.) To date, Slovak has not complied with the court's order.

D. The Fees Motion

On January 29, 2019, Wells Fargo filed a motion for a scheduling order to move for attorneys' fees and costs. (ECF No. 252.) Wells Fargo specifically requested the court issue a scheduling order allowing them up to and including March 8, 2019 to file the Fees Motion incurred defending against the Sanctions Motion. (*Id.* at 2.) Wells Fargo stated it did not believe the time to move for fees and costs under these circumstances

was governed by any specific time limit, however, it requested a scheduling order out of "an abundance of caution to establish certainty and avoid any potential dispute about the timeliness of such a motion." (*Id.*) The court granted Wells Fargo's request for a briefing schedule and ordered the motion to be filed on or before March 8, 2019.

On February 2, 2019, Slovak filed his notice of appeal of the court's decision on the Sanctions Motion. (ECF No. 254.) Subsequently, Wells Fargo filed a motion for an extension of the scheduling order to file their Fees Motion. (ECF No. 258.) On March 25, 2019, the court denied Wells Fargo's motion to extend the scheduling order because it determined that the appeal divested the court of jurisdiction to rule on issues related to the Sanctions Motion while Slovak's appeal was pending – including the question of whether fees and costs should be assessed. (ECF No. 259.) Ultimately, the Ninth Circuit declined jurisdiction over Slovak's appeal on June 24, 2019 (ECF No. 260), and the mandate issued on July 16, 2019 (ECF No. 261).

On November 26, 2019, several months after the mandate issued, Wells Fargo filed the Fees Motion. (ECF No. 263). Wells Fargo argues the Sanctions Motion "stem[med] from a baseless sanctions assault" against Wells Fargo, Snell, and individual Snell attorneys, who purportedly "produced 'fabricated forgeries' in connection with a 'forensic inspection' of [Slovak's] loan documents." (*Id.* at 2.) Wells Fargo argues there are two bases to award attorney's fees and costs, the court's inherent authority to sanction Slovak for his bad faith conduct for filing the Sanctions Motion and pursuant to 28 U.S.C. § 1927. (*Id.* at 8, 13.)

Slovak opposes the Fees Motion arguing the motion should be denied because the court "never passed on the efficacy or weight of Dr. Kelley's forensic opinions" only passing on the admissibility of Dr. Kelley's testimony, and as such Slovak cannot be sanctioned by the court for relying in good faith on the credentials of a forensic expert rejected by the court. (ECF No. 269 at 3.) Essentially, Slovak asserts "the court may have dismissed the messenger, but it did not dismiss the message" and the "highly detailed and technical opinions" of Dr. Kelley "were never entertained" by the court in its

January 15, 2019 disqualification order. (*Id.* at 2.) Slovak's opposition reiterates the same arguments made during the Sanctions Motion hearing regarding Dr. Kelley's qualifications as an expert witness. (*Id.* at 6-8.) Finally, Slovak's opposition alleges the Fees Motion erroneously attempts to impose § 1927 sanctions against Slovak, a party to the litigation. Wells Fargo replied on January 17, 2020. (ECF No. 270.)[3]

### E. Slovak's Motion to Strike

Prior to filing his opposition, Slovak filed a motion to strike the Fees Motion on the basis that it violates the Federal Rules of Civil Procedure, the Local Rules, and is untimely and should be summarily stricken for various reasons. (ECF No. 268 at 1.) Wells Fargo opposed Slovak's motion to strike arguing: (1) the rule on which the motion to strike is based (Federal Rule of Civil Procedure 54(d)) is not applicable to the Fees Motion because it does not seek an award following the entry of a final judgment; (2) Rule 54(d) expressly excepts any request for sanctions under 28 U.S.C. § 1927, which is, in part, the basis of Wells Fargo's motion; and, (3) Slovak misstates the basis of the court's denial of Wells Fargo's request for extending the scheduling order dates in filing the fees motion by insinuating that the court denied it on the merits of the request. (*Id.* at 1-2.) Slovak replied on January 27, 2020. (ECF No. 277.)

On January 21, 2020, Johannessen filed an affidavit in support of the motion to strike Wells Fargo's § 1927 claim for attorneys' fees against him personally because he did not become attorney of record until *after* the Sanctions Motion was filed. (ECF No. 272.) Johannessen filed an errata on February 6, 2020, requesting a hearing to

---

[3] Slovak filed a motion for leave to file a sur-reply to the Fees Motion on January 23, 2020, (ECF No. 273), however, he later withdrew this motion. (ECF No. 276.) On January 28, 2020, Slovak filed a document entitled, "Robert Slovak's Objections to and Request to Strike Unsupported Claim for Attorneys' Fees and Costs." (ECF No. 278.) This document is plainly a "sur-reply" labeled by a different name. Pursuant to Local Rule 7-2(g) a "party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause. The judge may strike supplemental filings made without leave of court." Accordingly, Slovak's document of objections and request to strike unsupported claim for attorneys' fees and costs (ECF No. 268) is stricken from the record as an improper filing without leave of court under both LR 7-2(b) and (g).

9

1  address the matters related to Johannessen's affidavit in connection with the two
2  motions presently before the court. (ECF No. 279.)

**II.    DISCUSSION**

Wells Fargo has moved for attorneys' fees and costs under two legal theories: (1) the court's inherent authority; and (2) 28 U.S.C. § 1927.  Each argument will be addressed in turn.

A.    Court's Inherent Authority

Wells Fargo asserts that the court should order Slovak to pay its fees and costs, pursuant to its inherent authority, as a sanction in defending against the Sanctions Motion it claims Slovak filed in bad faith.  Wells Fargo argues evidence of Slovak's bad faith is demonstrated by Slovak's: (1) reliance on Dr. Kelley's "expert" report and Mr. Michaels's opinion on Dr. Kelley's report as basis for sanctions; and, (2) filing a different motion than the one previously provided to Wells Fargo under Rule 11's safe harbor provision and misrepresenting that fact to the court. (ECF No. 263.)

Slovak's opposition asserts that sanctions cannot be assessed for relying in good faith on the credentials of forensic experts rejected by the court and that the Rule 11 motion served on Wells Fargo provided sufficient notice as to the Rule 11 issues asserted by Slovak — regardless of whether additional theories for sanctions were added to the motion later. (ECF No. 269.)

A federal district court also has inherent authority to sanction conduct abusive of the judicial process. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-46 (1991).  This power, however, is to be exercised with restraint and discretion. *Id.* at 44.  Inherent power sanctions may be imposed against attorneys, clients, and *pro se* litigants. *Aleyska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 258-59 (1975).  The court's "inherent power 'extends to a full range of litigation abuses.'" *Fink v. Gomez,* 239 F.3d 989, 992 (9th Cir. 2001) (quoting *Chambers,* 501 U.S. at 46-47).

The court has discretion to rely on its inherent powers rather than a federal rule or statute. *Fink,* 239 F.3d at 994 (citing *Chambers,* 501 U.S. at 50).  Under its inherent

power, sanctions may include fines (*see Shepherd v. Am. Broad. Cos.,* 62 F.3d 1469, 1472-73 (D.C. Cir. 1995)); awards of attorneys' fees and expenses (*see Roadway Express Inc. v. Piper,* 447 U.S. 752, 765 (1980)), and contempt citations (*id.* at 764). Again, it is clear that "one permissible sanction" under the court's inherent power is "an assessment of attorney's fees" "instructing a party that has acted in bad faith to reimburse the legal fees and costs incurred by the other side." *Goodyear Tire & Rubber Co. v. Haeger,* 137 S.Ct. 1178, 1186 (2017).

"Before imposing sanctions under its inherent sanctioning authority, a court must make an explicit finding of bad faith or willful misconduct." *In re Dyer,* 322 F.3d 1178, 1196 (9th Cir. 2003); *see also Fink,* 239 F.3d at 993-94. Recklessness, when combined with an additional factor such as frivolousness, harassment, or an improper purpose, may support sanctions. *See In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010); *Gomez v. Vernon,* 255 F.3d 1118, 1134 (9th Cir. 2001); *Fink,* 239 F.3d at 994. Mere negligence or recklessness alone will not suffice. *In re Lehtinen,* 564 F.3d 1052, 1058 (9th Cir. 2009). "[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith." *Fink,* 239 F.3d at 994. An attorney's bad faith is assessed under a subjective standard, and "is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Litig.,* 78 F.3d 431, 436 (9th Cir. 1996) (quotation and citation omitted).

Wells Fargo points to two primary bases to establish Slovak's "bad faith": (1) his reliance on his retained experts; and, (2) the service of a Rule 11 motion on opposing counsel under the safe harbor provisions that was different from the Sanction Motion that was ultimately filed.

*///*

*///*

*///*

*///*

### 1. Reliance on Retained Experts

Wells Fargo alleges that Slovak's reliance on the opinions of Dr. Kelley and Mr. Michaels was done in bad faith. (ECF No. 263 at 9-11.) However, Wells Fargo's motion does not specify whether Slovak's attorneys and/or Slovak himself individually, should be sanctioned under this theory. (*Id.*) Regardless, the court cannot conclude that either Slovak or his counsel, Pankopf, filed the Sanctions Motion in bad faith. The court is not convinced that Slovak did not have any reasonable or good faith basis to believe in the merits of his position. It appears Slovak and Pankopf relied upon the alleged "expert" reports and opinions of Dr. Kelley and Mr. Michaels who were proffered as experts in the field of forensic document examination. Although Slovak's experts were ultimately rejected by the court, and may have been rejected by other courts, this does not mean that Slovak or Pankopf did not have a basis to reasonably believe the documents tendered by Wells Fargo were not the original copies of the note and Deed of Trust as required by the settlement agreement. Reasonable minds can differ on expert opinions offered by parties, and the court finds that Slovak's reliance on Dr. Kelley's opinion, while questionable, does not mean that the Sanctions Motion was filed without any basis in law or fact, nor does it mean that Slovak's sole purpose in filing the motion was to harass Wells Fargo. Although the court disagrees with many of Slovak's and his attorneys' actions, the court simply is not convinced that they engaged in willful misconduct such that it supports a finding of bad faith.

### 2. Slovak's Rule 11 Violation

Wells Fargo also alleges that Slovak's failure to comply with the requirements of Rule 11's safe harbor provisions is tantamount to bad faith. (ECF Nos. 263 at 11-13, 270 at 5-8.) Federal Rule of Civil Procedure 11 provides that when an attorney signs a pleading, motion or other paper and presents it to the court, the attorney certifies that it "is not being presented for any improper purpose;" "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous legal argument for extending, modifying, or reversing existing law or for establishing new law;" "the factual

contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;" and, "denials of factual contentions are warranted on the evidence or… reasonably based on a belief or lack of information." Fed. R. Civ. P. 11(a), (b)(1)-(4).

A motion under Rule 11 must be made separately and describe the conduct that violates the rule. Fed. R. Civ. P. 11(c)(1). It must be served under Rule 5 and the offending attorney or party has 21 days to withdraw or correct the challenged paper, claim, defense, contention or denial. Fed. R. Civ. P. 11(c)(2). If the matter is not withdrawn or corrected within 21 days, the party may then file the Sanctions Motion. Fed. R. Civ. P. 11(c)(2).

Wells Fargo argues that Rule 11 requires the motion served on the nonmoving party and the filed motion be the same. (ECF No. 263 at 11-12.) However, Slovak did not do so. Rather, he provided a different motion than the Sanctions Motion he actually filed. Slovak asserts he followed Rule 11's procedural requirements by serving the Rule 11 motion on Wells Fargo within the 21-day time period required and that Wells Fargo's argument that Rule 11's safe harbor provision requires service of identical motions is unfounded. (ECF No. 269 at 10-12.) Presently, the issue of whether the safe harbor provision requires the motion served and the motion filed to be identical is one that has yet to be explicitly addressed by the Ninth Circuit and neither Wells Fargo nor Slovak have provided the court with clear precedent from this district.

District courts within the Ninth Circuit have come to different conclusions on the matter. *Compare Rygg v. Hulbert,* No. C11-1827JLR, 2012 WL 12847008, at *3 (W.D. Wa. Sept. 21, 2012) (holding that the procedural requirements of Rule 11 are satisfied even where "the motion served to satisfy the safe harbor requirements is different from the motion filed with the court, so long as the filed motion does not raise any new arguments."); *Shared Med. Res., LLC v. Histologics, LLC,* 2013 WL 12138991, at *4 (C.D. Cal. May 23, 2013) (finding that the authorities cited by Plaintiff for the proposition that counsel must be served with a "filing-ready motion" in *Truesdell* was not supported

13

by any cited authority), *with Gidding v. Anderson,* 2009 WL 1631625 at *1 (N.D.Cal. June 9, 2009) (denying defendants' Rule 11 sanctions motion because "[d]efendants filed with the Court a motion that includes a memorandum of points and authorities, supporting declarations and exhibits that defendants did not serve at the outset of the safe harbor period"); *O'Connell v. Smith,* 2008 WL 477875 at *2 (D. Ariz. Feb. 12, 2008) (rejecting the argument that a draft motion raising similar bases for sanctions satisfied Rule 11(c)(2) and holding that Ninth Circuit law required the actual motion be served"). However, this district addressed the issue in an unpublished opinion, *MetLife Bk., N.A. v. Riley,* 2010 WL 4024898, at *3 (D. Nev. Oct. 13, 2010), noting that "courts find that failure to 'serve a copy of the full motion that will be filed with the court' does not satisfy the safe harbor provision."

Given that the Ninth Circuit has yet to address this issue and there appears to be a split of authority within the district courts, it is reasonable that Slovak understood the procedural requirement for serving a Rule 11 motion to mean something different than Wells Fargo. Therefore, the court cannot conclude that serving Wells Fargo with a different motion from the Sanctions Motion is sufficient to constitute bad faith conduct. Thus, without a finding of bad faith, the court declines to impose sanctions of attorneys' fees and costs based on its inherent authority.

B. <u>28 U.S.C. § 1927</u>

Wells Fargo also seeks attorneys' fees and costs pursuant to 28 U.S.C. § 1927. (ECF Nos. 263 at 13-14, 270 at 8-9.) Wells Fargo argues that this court has authority to award its fees under 28 U.S.C. § 1927 for Slovak's bad faith in filing the Sanctions Motion and challenging the authenticity of the loan documents. (*Id.*) Wells Fargo's request for its attorneys' fees and costs pursuant to § 1927 is directed at Slovak's counsel, Pankopf and Johannessen. (ECF No. 270 at 8.)

Section 1927 states:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy

personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Section 1927 sanctions can only be imposed against an attorney or other person permitted to conduct cases in federal court. These sanctions may not be imposed against a party to the litigation nor may they be imposed against a law firm. *See Kaass Law v. Wells Fargo Bank, N.A.,* 799 F.3d 1290 (9th Cir. 2015.) "The purpose of § 1927 may be to deter attorney misconduct, or to compensate the victims of an attorney's malfeasance, or to both compensate and deter." *Haynes v. City & Cty. of San Francisco,* 688 F.3d 984, 987 (9th Cir. 2012).

Section 1927's language – "unreasonably and vexatiously" – "implies a bad faith or intentional misconduct requirement not explicit in the statute." *Barnd v. City of Tacoma,* 664 F.2d 1339, 1343 (9th Cir. 1982). Therefore, "[s]anctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mountain Club, LLC,* 796 F.3d 1004, 1007 (9th Cir. 2015) (internal quotation marks omitted). Among other circumstances, "bad faith is present when an attorney knowingly or recklessly raises a frivolous argument." *Id.* (internal quotation marks and alteration omitted). An argument is frivolous if its resolution "is obvious" or the argument is "wholly without merit." *Nat'l Mass Media Telecomm. Sys., Inc. v. Stanley,* 152 F.3d 1178, 1181 (9th Cir. 1998) (internal quotation marks omitted).

Sanctions under § 1927 are appropriate upon a finding that an attorney "recklessly or intentionally misled the court." *Girardi*, 611 F.3d at 1061. Thus, § 1927 sanctions require bad faith or something akin to bad faith, i.e., recklessness plus something more such as frivolousness or an improper purpose. *See Moore v. Keegan Mgmt. Co.,* 78 F.3d 431, 436 (9th Cir. 1996); *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.,* 210 F.3d 1112, 1118 (9th Cir. 2000); *B.K.B. v. Maui Police Dep't,* 276 F.3d 989, 993-94 (9th Cir. 2001). A court retains "substantial leeway" when determining whether to impose § 1927 sanctions. *Haynes,* 688 F.3d at 987.

First, to the extent Wells Fargo seeks attorneys' fees and costs against Johannessen, the court finds that this is inappropriate. It is undisputed that Johannessen did not make an appearance in this case until well after Slovak retained his two experts and Pankopf filed the Sanctions Motion. (ECF No. 232.) There is no evidence Johannessen participated in any of these actions or that he was involved in any of the decisions leading to the filing of the Sanctions Motion. Rather, Johannessen entered the case after the Sanctions Motion was fully briefed. His only involvement relative to the Sanctions Motion was his participation in the hearing ordered by the court. Therefore, the court rejects the contention that sanctions would be proper against Johannessen under these circumstances.

Second, the court is not convinced that Pankopf, as counsel for Slovak, acted in bad faith in filing the Sanctions Motion or in pursuing the arguments he made on behalf of Slovak, as explained above. The court disagreed with his position and denied his motion. Although Pankopf's actions or strategic decisions may not comport with how others would litigate a case, this does not provide sufficient evidence to conclude that Pankopf intentionally misled the court by filing and prosecuting the Sanctions Motion or acted in bad faith in doing so. Simply put, Pankopf's actions and questionable strategic decisions do not rise to the level of "knowledge" to infer intentional conduct intended to mislead the court. Pankopf's conduct does not warrant sanctions at this time. Therefore, the court denies the Fees Motion in its entirety.

### C. Slovak's Motion to Strike

Based on the court's denial of the Fees Motion, Slovak's motion is strike is denied as moot.

## III. CONCLUSION

The court notes that the parties made several arguments and cited to several cases not discussed above. The court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the court.

16

For the reasons stated above, Wells Fargo's motion for attorneys' fees and costs (ECF No. 263) is **DENIED**.

In addition, Slovak's motion to strike (ECF No. 268), is **DENIED** as moot.

Finally, Slovak's motion for leave to file a sur-reply (ECF No. 273), is **DENIED** as moot and Slovak's later filed objections (ECF No. 278), are **STRICKEN** from the record.

**IT IS SO ORDERED.**

**DATED**: February 26, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**