**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ROBERT SLOVAK,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>GOLF COURSE VILLAS<br>HOMEOWNERS' ASSOCIATION, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 3:13-CV-0569-MMD-CLB<br><br>**ORDER GRANTING WELLS FARGO BANK, N.A'S MOTION TO EXCLUDE PLAINTIFF'S DISCLOSED WITNESSES AND DENYING SLOVAK'S MOTION TO EXCLUDE WELLS FARGO'S DISCLOSED WITNESS**<br><br>[ECF Nos. 338, 353] |

Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion to exclude Plaintiff Robert Slovak's ("Slovak") disclosed witnesses. (ECF No. 338.) Slovak responded, (ECF No. 352), and Wells Fargo replied. (ECF No. 355.) Also before the Court is Slovak's motion to exclude Wells Fargo's disclosed witness. (ECF No. 353). Wells Fargo responded, (ECF No. 363), and Slovak replied. (ECF No. 367.) For the reasons discussed below, the Court grants the motion to exclude Slovak's disclosed witnesses, (ECF No. 338), and denies the motion to exclude Wells Fargo's disclosed witness, (ECF No. 353).

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Slovak filed this lawsuit in 2013 seeking quiet title and declaratory relief related to a condominium property located in Incline Village, Nevada. (ECF No. 1.) A settlement was reached between Wells Fargo and Slovak in June 2014. (ECF No. 83.) Pursuant to the terms of the agreement, Slovak agreed to pay Wells Fargo $280,000. (ECF No. 124.) In return, Wells Fargo agreed to provide Slovak with the deed of trust, the note, and to reconvey the property to him. (*Id.*) To date, more than seven years later, the terms of that settlement agreement have yet to be consummated.

The primary contention between the parties remains the issue of whether the documents tendered by Wells Fargo, are, in fact, the original note and deed of trust required to be delivered pursuant to the terms of the parties' agreement.

At a hearing on June 20, 2018, Slovak's attorney, Pankopf, claimed the forensic examination conducted on the loan documents "irrefutably" established the documents were "forgeries" and Wells Fargo had perpetrated a fraud on the Court. (ECF No. 202, Hr'g Minutes; ECF No. 214 at 3, Hr'g Transcript.) His claims were based upon two expert reports he received prior to the hearing but did not provide to the Court or opposing counsel. (ECF No. 214 at 5-6.) Based on the seriousness of Slovak's accusation, but without any evidence to review, the Court concluded it could not rule on the outstanding motion to enforce settlement until it had an opportunity to consider the allegations made by Slovak. (*Id.* at 15-16.) Slovak then withdrew his motion to enforce, without prejudice, indicating he wanted to proceed by filing a motion for sanctions. (*Id.* at 17.)

Slovak filed a motion for sanctions on August 17, 2018. (ECF No. 218.) The overarching contention of Slovak's motion for sanctions was his argument that Wells Fargo and its counsel failed to provide "original copies" of the note and deed of trust as required by the parties' previous settlement agreement. (*Id.*) According to Slovak, the documents Wells Fargo and its counsel tendered as "originals" were, "at best copies or at worst fabricated forgeries." (*Id.* at 10.) Slovak's argument was premised upon the alleged expert reports and opinions provided by Dr. James E. Kelley ("Dr. Kelley") and Gary Michaels ("Michaels"), who Slovak proffered as experts in the field of forensic document examination. Slovak offered the C.V.s of Dr. Kelley and Michaels, as well as their respective expert reports, as evidence to support his contentions. (*Id.* at Exs. 8-11.)

According to Dr. Kelley's report, the documents tendered were not originals but were copies made by an ink jet printer. (*Id.* at Ex. 10.) Michaels did not personally examine the documents. (*Id.* at Ex. 11.) Rather, according to this report, he simply reviewed Dr. Kelley's report and conclusions. Based on that review, he agreed that the documents were not the originals but were copies made by an ink jet printer. However, Michaels also went one step further concluding the documents were "forgeries." (*Id.*)

Wells Fargo opposed the motion for sanctions on August 31, 2018. (ECF No. 222.) Wells Fargo argued that the Court should deny the sanctions for a variety of reasons.

Specifically, Wells Fargo challenged Slovak's expert witnesses arguing that their expert opinions and reports should be rejected by the Court because neither witnesses' testimony or opinions satisfy the requirements of Federal Rule of Evidence 702 or the *Daubert* analysis. (*Id.* at 7-10.) According to Wells Fargo, without these expert opinions and reports, there was no evidence in the record to support any finding that the documents tendered were not the originals. Slovak filed his reply on September 11, 2018. (ECF No. 225.)

Due to the seriousness of Slovak's allegations, the Court ordered an evidentiary hearing to determine whether the expert opinions and reports offered by Slovak satisfied Rule 702 and *Daubert*. (ECF No. 238.) This hearing was held on November 28, 2018. (ECF No. 244, Hr'g Minutes; ECF No. 249, Hr'g Transcript.) At that hearing, the Court heard testimony of Dr. Kelley regarding his qualifications and his expert opinions regarding the documents. (*Id.*)

At Slovak's request, however, the Court agreed to bi-furcate the hearing into two parts. The first stage of the hearing was to address Slovak's motion for sanctions – specifically, to determine whether the expert testimony of Slovak's experts satisfied the requirements under Federal Rules of Evidence 702 and *Daubert*. The second stage of the hearing was to take evidence related to the limited question of the authenticity of the documents Wells Fargo provided and claimed were the "original." Thus, the only issue to be presented at the second stage of the bifurcated hearing is whether the documents provided by Wells Fargo are the authentic originals.

Initially, it was the Court's intent to issue a ruling on Slovak's motion for sanctions after concluding both aspects of the evidentiary hearing. However, after hearing the testimony from Dr. Kelley, it was plain that the motion for sanctions could be decided without any additional evidence or testimony. Thus, following the evidentiary hearing, the Court entered its order denying Slovak's motion for sanctions after finding Slovak's expert witness, Dr. Kelley was not qualified to provide expert testimony regarding forensic document analysis as he lacked the requisite "knowledge, skill, experience, training, or

education" in this field. (ECF No. 250.) In addition, the Court found that Dr. Kelley's methods were not reliable as required under *Daubert* and Rule 702. (*Id.*) In the order, the Court also ruled that a "forensic examination report" prepared by Michaels is equally inadmissible and would not be considered by the Court. (*Id.*) Thus, the Court denied Slovak's motion for sanctions ruling that Slovak provided no admissible evidence to support his claims that the documents tendered were not originals and denied the motion for sanctions. (*Id.*)

However, in the order, the Court did not make any factual findings related to whether there was sufficient evidence presented by Wells Fargo to establish that the documents it presented in the Spring of 2018 were authentic and original. This issue was still to be addressed at the second stage of the evidentiary hearing. However, given that over five years had elapsed between the date of the parties' settlement conference and the continued evidentiary hearing (which was set to take place in February 2019), it was unclear if Slovak was ready, willing, and able to pay the $280,000 required to finalize the settlement, if the Court found in favor of Wells Fargo.

Therefore, the Court ordered Slovak to deposit $280,000 with the Clerk of the Court to evidence his ability to abide by the settlement terms before any further litigation ensued related to the enforcement of the parties' settlement agreement. (ECF Nos. 251.) The Court vacated the second part of the evidentiary hearing at that time and indicated the hearing would be rescheduled after Slovak complied with the order to deposit the funds. (*Id.*)

Slovak failed to comply. Rather, Slovak filed an interlocutory appeal to the Ninth Circuit Court of Appeals, which the Ninth Circuit dismissed for lack of jurisdiction. (ECF Nos. 254, 260.) At no time did Slovak seek a stay of the Court's deposit order while the case was pending on appeal.

Upon remand, the Court again ordered Slovak to deposit $280,000 with the Clerk of the Court to evidence his ability to finalize the settlement agreement. (ECF No. 282.) Again, Slovak failed to comply. This time Slovak used a new tactic. He filed an untimely

"objection" the second deposit order, which he simultaneously titled a "motion for reconsideration." (ECF No. 283.) The District Court overruled the objection. (ECF No. 291). After the objection was overruled, and even though the deposit orders were never stayed, Slovak continued to refuse to comply with the Court's deposit orders. Ultimately, the Court entered an "order to show cause" why Slovak should not be sanctioned for his violations of the Court's deposit orders. (ECF No. 292.) After the hearing on the order to show cause, Slovak finally deposited the funds into a separate bank account.[1] After several continuances were granted, the continued evidentiary hearing is now set for October 27 and 28, 2021. (ECF Nos. 312, 317, 362.)

### A.  Wells Fargo's Motion to Exclude Witnesses

In preparation for the continued evidentiary hearing, the parties submitted their witness and exhibit lists, (ECF Nos. 336, 337). Thereafter, Wells Fargo filed a motion to exclude all witnesses designated by Slovak, except for Slovak and the witnesses Wells Fargo intends to call. (ECF No. 338.)

The witnesses listed by Slovak that Wells Fargo seeks to exclude are as follows:

1. Douglas Cobb – expected to testify regarding his observation of the paper provided to Plaintiff at the signing of the note and deed of trust compared to the documents presented at the November 2018 hearing and December 2018 examination.
2. Tom Vastrick – expected to testify regarding the Jan Kelly report.
3. Alan D. Wallace – expected to testify regarding escrow and title Procedures, custodial file, custodial agreement, and bailor/bailee agreement/receipt.
4. Dr. James Kelley – expected to testify regarding loan documents he has observed.
5. Robert Ferguson – expected to testify regarding loan documents and chain of custody.
6. Catherine O'Mara – expected to testify regarding loan documents and chain of

---

[1] The Court, however, held its decision in abeyance on the question of whether sanctions would be imposed on Slovak for his repeated failures to comply with the Deposit Orders. A decision on this issue will be issued in due course.

custody.

7. Shae Smith – expected to testify regarding loan documents and chain of custody.

8. Kevin Michael Weber – expected to testify regarding loan documents and chain of custody.

(*Compare* ECF No. 336, *with* ECF No. 337.)

Wells Fargo argues that Slovak is "improperly trying to use this hearing as a re-do of his failed 2018 effect to affirmatively prove his signature was inauthentic . . ." (ECF No. 338.) Wells Fargo argues that one expert, Dr. Kelley, has already been excluded, three witnesses are experts with no reports, and the others are supposed custodial witnesses Wells Fargo did not designate and were not subpoenaed. (*Id.*)

Slovak responded that he never finished presenting his case because Wells Fargo produced a witness who was not a qualified records custodian, and that Dr. Kelley is now a fact witness. In addition, Slovak argues that Doug Cobb, Alan Wallace, and Thomas Vastrick are qualified expert witnesses and the Court never precluded or limited Slovak's identification of fact or expert witnesses. (ECF No. 352.)

Wells Fargo replied that Slovak mistakes the hearing's purpose, Slovak failed to disclose expert reports for his three newly designated experts, the three experts never observed the loan documents and the time to do so has passed, the Court has already excluded Dr. Kelley, and Slovak's pre-hearing disclosure was untimely. (ECF No. 355.)

**B.     Slovak's Motion**

Slovak also filed a motion to exclude Wells Fargo's disclosed witness, Jodie Hawkins ("Hawkins"). (ECF No. 353.)[2] Slovak argues (1) he was "denied his right to finish his day in court midstream," including the completion of his examination of Hawkins; (2) Hawkins is unqualified to be a "chain of custody" witness; and (3) Slovak requests the opportunity to finish his witness examination of Hawkins. (*Id.*)

---

[2] Slovak also specifically "requested that he be afforded the same accommodation provided Wells Fargo by the Court with respect to Wells Fargo's motion to exclude Mr. Slovak's witnesses. That is, an opportunity to file a reply to any response Wells Fargo may file to Mr. Slovak's instant Motion to Exclude." (*Id.* at 11.)

In response, Wells Fargo argues the motion should be denied because (1) excluding Hawkins from testifying as a representative and custodian of records is squarely at odds with the express purpose of the hearing, which is for Wells Fargo to present evidence of the Loan Documents' authenticity through its expert testimony and custodial witnesses; (2) Slovak is too late in scrutinizing how Hawkins was designated at the November 2018 hearing so the time for any such objection has long passed and is therefore waived; (3) Slovak's argument that Hawkins is unqualified goes only to weight and not admissibility; and (4) Slovak was not denied the right to fully examine Hawkins at the November 2018 hearing. (ECF No. 363.)

Slovak's reply was due September 14, 2021. On September 14, 2021, Slovak filed an appeal for district judge review of this Court's September 1, 2021, minute order. (ECF No. 365.) In his objection, Slovak, discussed, in part, the "no filings" directive of the minute order arguing it "not only chills legal advocacy, but it also suppresses it." (*Id.* at 2-3.) Because Slovak did not file a timely reply, but instead filed his objection, the Court granted Slovak a three-day extension to file his reply to Wells Fargo's response. (ECF No. 366.) On September 17, 2021, Slovak filed a reply and stated the extension was not necessary and Slovak "did not reply on September 14, 2021 simply because he does not believe one is warranted." (ECF No. 367.)

**II.      DISCUSSION**

    **A.      Scope and Purpose of the Hearing**

The scope and purpose of the continued evidentiary hearing is to allow Wells Fargo to proffer evidence that the loan documents are original documents. (Tr. Of Proceedings of November 28, 2018, ECF No. 249 at 179:3-18.) On several occasions, the Court has made the scope and purpose of this hearing clear on the record. Specifically, during the first part of the evidentiary hearing, the following exchange took place:

> THE COURT: The plaintiff has filed a Motion for Sanctions that alleges Wells Fargo lied to the Court when it said it had original documents. And

the only evidence to support that that information is false is the expert testimony and witness that has been offered, at this point, by the plaintiff.

MR. JOHANNESSEN: Uh-huh.

THE COURT: If that testimony and information is not admissible, then we are left back with the idea that the only evidence in this case is that this is the original -- these are the originals, as it's been represented by Wells Fargo. That might mean that we have to have a bifurcated hearing –

MR. JOHANNESSEN: Yes.

THE COURT: -- to then come back and decide that question.

(*Id.* at 179:3-18.)

In the event the Court excluded Dr. Kelley's testimony, which it ultimately did,[3] the Court noted on the record it was unclear whether it was even necessary to take any additional evidence regarding the originality of the loan documents:

> THE COURT: -- if there's no evidence that the documents are not originals, if [Dr. Kelley's] testimony is not provided -- is not admissible, and it's not accepted by the Court, then there's no evidence to claim that they're not originals.
> . . .
> And I will tell you I am disinclined to have more evidence and more testimony and more hearings on this question because without expert testimony, I see no reason why I should question the statements made by officers of this court. And, I see no reason not to accept the fact that they have affidavits provided by custodians of record that state we received these documents and then we provided them to our attorneys.

(*Id.* at 211:14-18, 213:2-10.) However, to ensure that there was "a very thorough record in the event that [an appeal was filed] at the conclusion of this hearing" and to "create a record and to protect everybody involved," (*id.* at 218:5-13), the Court granted Slovak's request to bifurcate the hearing:

> THE COURT: And Wells Fargo's position has been, from the beginning of this, on remand –
>
> MR. JOHANNESSEN: Yes.
>
> THE COURT: -- that these are the originals.

---

[3] ECF No. 250.

> MR. JOHANNESSEN: I agree with that. I agree that that has been their position.
>
> THE COURT: And so without any evidence to the contrary, where would that leave us?
>
> MR. JOHANNESSEN: Oh, I don't think just because there's a negative you can prove the positive …

(*Id.* at 186:15-24.)

Therefore, the purpose of the second stage of the evidentiary hearing is, *narrowly tailored* for Wells Fargo to put on its case on originality through its single expert and its chain of custody witnesses. Specifically, the Court stated:

> I think we should have a second hearing. And at that hearing, I would ask if Wells Fargo intends to have an expert witness that's going to opine as to whether or not these documents are original; that that person be prepared to testify to that but also, if necessary, provide a report to the plaintiff so that they can be prepared to cross-examine. . . . I think in this particular instance, because I think it makes sense to get to that second issue, that we should have that person prepared to testify to just not Dr. Kelley and his report, but also if that person is going to go on to do the next step, which I would suggest that they do so that we can get to that question of originality as well. If there's any witnesses as to chain of custody, I think those witnesses should be prepared to testify.

(*Id.* at 219:19-220:11.)

Moreover, the Court agreed to take further evidence as to whether the loan documents Wells Fargo proffered in connection with the settlement were originals. (*Id.*) However, the Court made a record that it will not allow the parties to "litigate and litigate and litigate." (*Id.* at 190:17.) The Court determined Slovak has already put on his case:

> THE COURT: So if this Court finds that Dr. Kelley's opinion is not admissible, and that it rejects his opinions, then we're left back with the same place where we were before.
>
> MR. JOHANNESSEN: Uh-huh.
>
> THE COURT: I'm not sure I understand, at that point, why there would need to be any further examination because that's exactly what you already got. Right? Did plaintiffs not hire an expert to do an examination of these documents?

9

|   |   |
|---|---|
| 1 | |
| 2 | MR. JOHANNESSEN: Correct. |
| 3 | THE COURT: Okay. So let's go on – forward this way -- |
| 4 | MR. JOHANNESSEN: Okay. |
| 5 | THE COURT: -- this hearing is specific to that. But at end of the day, if that evidence is gone, there is no other evidence that these are not originals and that these documents are not authentic. |
| 6 | |
| 7 | (*Id.* at 183:1-18.) |

The Court has since reiterated the purpose of the bifurcated evidentiary hearing:

> At the November hearing, Slovak requested the court bifurcate the ultimate issue of whether there was evidence that the documents were, in fact, originals. (ECF Nos. 244 at 4, 249 at 204.) Slovak argued that even if the court denied the Sanctions Motion or rejected his experts, there was still no evidence in the record that the documents were in fact originals and the court should hold an additional hearing to make a factual finding on this issue. (ECF No. 249 at 204.)
>
> He asserted there may still be a basis to contest that the documents were originals even without his expert testimony. (*Id.* at 227.) The court agreed to the requested bifurcation and set a second hearing for February 7-8, 2019. (ECF Nos. 244 at 5, 249 at 243.)

(Feb. 26, 2020 Order, ECF No. 280, at 6-7.)

The Court restated in its July 16, 2021 order that ". . . the purpose and scope of the evidentiary hearing set for August 2021 remains the same as when this hearing was originally set in February 2019. . . . Specifically, the purpose of the hearing was, and continues to be, for the presentation of evidence related to the authenticity and originality of the documents offered by Wells Fargo in 2018 to finalize the parties' settlement agreement." (ECF No. 335, at 1-2.) This evidence will be presented through those witnesses that have personal knowledge of the chain of custody of the documents from the time they were signed until the hearing, and Wells Fargo's expert witness, which the Court expressly stated would be permitted to testify as to the originality and authenticity of the documents.

10

### B.     Witnesses at Issue

#### 1.     Dr. James Kelley

The Court has already concluded that Dr. Kelley "is not a qualified expert in the area of forensic document examination and his opinions are not supported by scientifically reliable or accepted methods or principals." (ECF No. 250 at 13.) The Court has further held "Dr. Kelley is excluded as an expert and his expert opinions are excluded from consideration by this court." (*Id.*)

Slovak claims that Dr. Kelley is a "fact witness" because he claims to have reviewed the documents provided at the first stage of the evidentiary hearing and now claims they are not the "same" as the documents he initially reviewed. (ECF No. 352 at 5-6.) However, the Court disagrees that Dr. Kelley can testify on these issues as merely a "fact witness." Dr. Kelley was provided the documents at the first stage of the hearing and was allowed ample time to review them. At that time, he was given the opportunity to testify as to whether the documents appeared to be the same as those that he previously examined and he claimed he could not testify to that without conducting additional "examination" of the documents. Therefore, the testimony that Slovak seeks to provide from Dr. Kelley is not merely lay observations (as he now claims); rather, he seeks to admit additional "expert" opinions from Dr. Kelley. However, this Court has already determined that Dr. Kelley is not an "expert," he is not credible, and, even if he had the credentials to be deemed a forensic document expert, the techniques he used to examine documents are unreliable. Therefore, the Court excludes Dr. Kelley from testifying at the continued hearing.

#### 2.     Doug Cobb, Tom Vastrick, Alan Wallace

Next, Wells Fargo argues that Slovak intends to call Douglas Cobb, Tom Vastrick, and Alan Wallace as experts; however, Slovak did not timely disclose these experts and no expert reports have been provided. (ECF No. 338 at 12.) Wells Fargo also argues that the Federal Rules of Civil Procedure do not contemplate an infinite number of experts on a subject, but instead one, and Slovak already introduced expert testimony and failed.

(*Id.* at 11.)

Slovak contends Cobb, Vastrick, and Wallace are all "experts" and should be allowed to testify. (ECF No. 352 at 4-7.) In support, Slovak does not produce any expert reports; rather, he merely attaches each person's C.V. and brief statements as to what their proposed testimony would be.

In reply, Wells Fargo again contends that Slovak's three newly designated expert witnesses should be excluded because Slovak did not disclose expert reports for any of them, as required by Fed. R. Civ. P. 26. Further, Wells Fargo argues the newly disclosed experts should not be permitted to testify regarding the Loan Documents because they have never observed the documents and the time to do so has long-since passed. (ECF No. 355.)

The Court agrees with Wells Fargo that the alleged expert testimony that Slovak seeks to offer with these experts is improper and should not be permitted.

### i. Expert Disclosure Pursuant to Fed. R. Civ. P. 26

Fed. R. Civ. P. 26(a)(2) governs the disclosure of expert testimony and provides that in addition to the disclosures required by Rule 26(a)(1), "a party must disclose the identity of any witness it may use at trial … this disclosure must be accompanied by a written report … if the witness is one retained or specifically employed to provide expert testimony in the case." The report must contain:

> (i) a complete statement of all opinions the witnesses will express and that basis and reasons for them; (ii) the facts or data considered by the witnesses in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witnesses testified as an expert at trial or deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B); *See Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011). Additionally, Fed. R. Civ. P. 26(a)(2)(D) provides that a party must make its expert witnesses disclosures at the times and in the sequences that the court orders.

In addition to the procedural requirements for disclosure of experts stated above, Federal Rule of Civil Procedure 702 defines the overarching requirements for the admission of expert testimony. The rule states that expert testimony can be admitted:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

"Faced with a proffer of expert scientific testimony, the court must determine at the outset … whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This usually entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The court has discretion under Rule 702 as a "gatekeeper to decide what evidence is relevant, reliable, and helpful the trier of fact." *Desrosiers v. Flight Int'l of Fla. Inc.*, 156 F.3d 952, 961 (9th Cir. 1998).

The first portion of the evidentiary hearing was held on November 18, 2018. (ECF No. 244.) Over two years later and less than two weeks before the second portion of the evidentiary hearing was to be held, Slovak disclosed—for the first time— three additional expert witnesses he wished to have testify at the hearing on August 6, 2021. (ECF No. 337.) Slovak's disclosure was untimely. In addition, Slovak failed to disclose the written reports for each purported expert as required by Fed. R. Civ. P. 26. Therefore, based upon the late disclosure and lack of written reports, Slovak's proposed experts will not be permitted to testify.

Also, the Court finds that Slovak's proposed experts must be excluded for additional reasons. Specifically, these witnesses must be excluded because the proposed

testimony identified by Slovak of these witnesses is improper and inadmissible under Rule 702. The Court will address each expert in turn.

### ii.      Cobb

First, Slovak seeks to admit the expert testimony of Cobb, who claims he is a "paper expert." However, Cobb has not reviewed the documents Wells Fargo submits are the authentic originals. Rather, Slovak admits that Cobb has only reviewed "unsigned duplicate original escrow documents." (ECF No. 352 at 6). Slovak apparently wants Cobb to review the documents presented at the hearing to opine whether the paper of those documents matches the paper that the alleged "unsigned duplicates" were printed on and is thus the same paper. Slovak claims if they are printed on the same paper, "then the settlement can be consummated." (*Id.*)

This is not a proper basis for an expert to testify and it will not be allowed. There has been no explanation as to how this "expert" would conduct an analysis of the competing documents or reach an opinion while sitting on the witness stand. There would be no way to evaluate whether this person is truly an expert, the methods used in reaching any "opinion" provided, or the reliability of those opinions – based analysis that would apparently occur—*in real time*—at the hearing. This type of testimony is improper in that there is no way to evaluate the methodology used by the expert. However, there would be no way for opposing counsel cross-examine such a witness. As such, this evidence would not be useful to the trier of fact. Therefore, the Court finds that Cobb's proposed testimony is not based upon sufficient facts or data, there is no way for the Court to determine if Cobb's testimony would be based on reliable scientific principles and/or methods, and, as such, his testimony proposed testimony would not be helpful to the trier of fact. Therefore, aside from the late disclosure and lack of expert report, Cobb will also not be permitted to testify as the proffered testimony does not meet the necessary requirements under Rule 702.[4]

---

[4]     It is worth noting that if Slovak was willing to consummate the settlement based on

### iii. Vastrick

Next, Slovak seeks to admit the expert testimony of Vastrick, who claims to be an expert in the areas of "handwriting, hand printing, typewriting, indented writing, counterfeiting, and mechanical impressions" and is expected to provide rebuttal testimony as to Jan Seaman Kelly's report. (ECF No. 352 at 5-7.)

Like Cobb, there has been no explanation how this "expert" would conduct an analysis of the competing documents while sitting on the witness stand to reach any type of admissible expert opinion. Here again, there would be no way to test whether this person is an expert in this field, any means to challenge the reliability of his methodology or his analysis that would also apparently occur in real time at the hearing. Therefore, as with Cobb, the Court finds that Vastrick's proposed testimony is not based upon sufficient facts or data, there is no way for the Court to determine if his testimony would be based on reliable scientific principles and/or methods, and, as such, the proffered testimony would not be helpful to the trier of fact. Therefore, Vastrick will also not be permitted to testify as his proposed testimony does not meet the necessary requirements under Rule 702 in addition to his late disclosure and lack of expert report.

### iv. Wallace

Finally, Slovak seeks to admit the expert testimony of Wallace, who claims to be an expert "regarding escrow and title procedures, custodial files and agreements, and bailor/bailee agreements." (ECF No. 352 at 5-6.) Slovak claims the unsigned original duplicate of the home equity line of credit note ("Note") he has in his possession is four single-sided pages whereas the note presented in Las Vegas for examination and the note presented at the hearing are two double-sided pages, thus Slovak claims Wallace will offer his opinions regarding why the duplicate originals are not printed on the same number of pages. (*Id.* at 6.)

It is entirely unclear to the Court how testimony about page numbers could

---

Cobb's review of the documents, this could have been addressed by the parties without having an evidentiary hearing.

possibly be relevant, reliable, or helpful in the Court's determination as to chain of custody. Thus, the proffered testimony does not satisfy the requirements of Rule 702 and will not be permitted.

In sum, Slovak's proffered experts were not timely disclosed and did not provide expert reports and, on this basis alone, should be excluded. However, in addition, these witnesses also do not have any personal knowledge of the actual chain of custody of the documents at issue and none of them have reviewed the actual documents Wells Fargo has proffered as the authentic originals. Therefore, none of these witnesses can provide expert opinions based on sufficient facts and data required by Rule 702.

As these witnesses were untimely disclosed, have not provided any information on their reliability any possible expert opinions they may provide, have no personal knowledge of the actual chain of custody of the documents, have no personal knowledge as to how Wells Fargo handled the documents at issue, and have not personally reviewed the documents at issue, the court finds, in its discretion, that these witnesses do not have any evidence to present that would be: (1) relevant; (2) reliable; or (3) helpful to the trier of fact. *Desrosiers*, 156 F.3d at 961. Therefore, the Court exercises its discretion and excludes Slovak's proffered experts from testifying at the evidentiary hearing for all the reasons stated above.

### 3. Robert Ferguson, Catherine O'Mara, Shae Smith, and Kevin Michael Weber

Wells Fargo and Slovak listed five duplicate witnesses who are expected to testify as to the loan documents and chain of custody. (ECF Nos. 336, 337.) Slovak listed four other chain of custody witnesses, listed above. (ECF Nos. 337.) Wells Fargo seeks to exclude Slovak's four additional chain of custody witnesses as too numerous. (ECF No. 338.) In his response, Slovak does not address these additional chain of custody witnesses. (*See* ECF No. 352.) Therefore, the Court determines that the five custodial witnesses identified by both Slovak and Wells Fargo are sufficient to determine the chain of custody. Therefore, Slovak's four additional chain of custody witnesses—Robert

16

Ferguson, Catherine O'Mara, Shae Smith, and Kevin Michael Weber—will not be permitted to testify.

### 4. Jodie Hawkins

Finally, Slovak seeks to exclude Wells Fargo's disclosed witness, Jodie Hawkins. (ECF No. 353.) Slovak argues (1) he was "denied his right to finish his day in court midstream," including the completion of his examination of Hawkins; (2) Hawkins is unqualified to be a "chain of custody" witness; and (3) Slovak requests the opportunity to finish his witness examination of Hawkins. (*Id.*)

In response, Wells Fargo argues the motion should be denied because (1) excluding Hawkins from testifying as a representative and custodian of records is squarely at odds with the express purpose of the hearing, which is for Wells Fargo to present evidence of the Loan Documents' authenticity through its expert testimony and custodial witnesses; (2) Slovak is too late in scrutinizing how Hawkins was designated at the November 2018 hearing so the time for any such objection has long passed and is therefore waived; (3) Slovak's argument that Hawkins is unqualified goes only to weight and not admissibility; and (4) Slovak was not denied the right to fully examine Hawkins at the November 2018 hearing. (ECF No. 363.)

Slovak replied on September 17, 2021; however, his reply contains no substantive argument. (ECF No. 367.)

As outlined above, the express purpose of this hearing is for Wells Fargo to present evidence of the Loan Documents' authenticity through its custodial witnesses. Not only is Slovak's objection untimely, but Slovak has no valid basis to object to Hawkins testifying for this purpose. Accordingly, Slovak's motion is denied.

### III. CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED** that Wells Fargo's motion to exclude Plaintiff's disclosed witnesses, (ECF No. 338), is **GRANTED**. The following witnesses will not be permitted to testify at the evidentiary hearing: Dr. James Kelley, Doug Cobb, Tom Vastrick, Alan Wallace, Robert Ferguson, Catherine O'Mara,

Shae Smith, and Kevin Michael Weber.

**IT IS FURTHER ORDERED** that Slovak's motion to exclude Wells Fargo's disclosed witness, (ECF No. 353), is **DENIED**.

**DATED**: September 21, 2021

_____
**UNITED STATES MAGISTRATE JUDGE**